IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

CHARLES MILLER,

        Plaintiff,

v.                                CIVIL ACTION NO.  2:23-cv-00340

CHARLESTON AREA MEDICAL CENTER,

        Defendant.

MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendant Charleston Area Medical Center Inc.'s ("CAMC") Motion to Dismiss [ECF No. 9]. Plaintiff Charles Miller responded in opposition, [ECF No. 14], and CAMC replied [ECF No. 17]. For the reasons stated herein, CAMC's Motion is **GRANTED in part**, and **DENIED in part**.

I.    Background

Mr. Miller worked as a respiratory therapist at CAMC for over 30 years. [ECF No. 1, ¶¶ 7, 13]. In September of 2021, to comply with a federal Centers for Medicaid and Medicare Services ("CMS") mandate, CAMC implemented a policy requiring all employees to be fully vaccinated against COVID-19. *Id.* ¶ 14. CAMC's mandate provided employees the opportunity to request exemptions based on religious and/or medical objections to receiving the vaccine. [ECF No. 9-1, at 2 ("Anyone requesting an exemption/accommodation must submit a completed

'Request for Exemption from COVID-19 Vaccination' form by Sept. 8. . . . These forms will be reviewed and the employee notified if approved.")]; *see also* [ECF No. 9-2 (explaining the vaccination policy and providing a link to an exemption request form)]. CAMC informed employees that they would be terminated if they were not vaccinated or had not received an exemption by February 23, 2022. [ECF No. 1, ¶ 27].

Mr. Miller submitted a request seeking both a religious and medical exemption on September 11, 2021. [ECF No. 1-1]. His religious exemption request— as repeated in his Complaint—explained his beliefs regarding the vaccine. Mr. Miller stated in his exemption request that the vaccine uses "fetal cell lines, which originated from aborted fetuses" and accepting the vaccine would make him "complicit in an action that offends [his] religious faith." [ECF No. 1, ¶¶ 18, 19]. He also alleges that being coerced to "take a medical treatment violates his religious faith and his right of conscience." *Id.* ¶ 20. Mr. Miller then voiced his belief that the vaccine is "gene therapy with the potential to alter a recipient's DNA, which is a violation of God's will and his bodily autonomy." *Id.* ¶ 21. Last, he expressed views that CAMC's mandate violates (1) informed consent and the Nuremberg Code; (2) an employee's right to privacy; and (3) the Americans with Disabilities Act. *Id.* ¶ 25.

With respect to his medical exemption request, CAMC requested an affidavit from Mr. Miller's physician about his medical status, and Mr. Miller provided a signed letter to CAMC from Dr. Gregory Harrah. *Id.* at 26; [ECF No. 9-4]. Dr. Harrah stated that Mr. Miller "has multiple medical problems and most recently

2

underwent coronary artery surgery" and thus, "[d]ue to his current situation is (sic) medically necessary that he not receive Covid vaccine at this time." [ECF No. 9-4, at 1].

CAMC denied both of Mr. Miller's exemption requests. On February 23, 2022, Mr. Miller submitted a second exemption request via a notarized letter stating that he strongly does not believe in gene therapy, and he cannot in good conscience and in accord with his religious faith receive the COVID vaccine. [ECF No. 1, ¶ 29]; [ECF No. 1-2]. His supervisor notified him on this same day that he would be terminated if he remained unvaccinated, and on February 24, 2022—the day after the vaccine mandate went into effect—Plaintiff was terminated from his position at CAMC. [ECF No. 1, ¶ 33].

Following his termination from CAMC, Mr. Miller filed a complaint with the United States Equal Employment Opportunity Commission ("EEOC") alleging both religious and disability discrimination. *Id.* ¶ 34. The EEOC gave Plaintiff notice of a right to sue on January 19, 2023. *Id.* He filed the instant action on April 19, 2023.

In his Complaint, Mr. Miller alleges five causes of action against CAMC: (1) religious discrimination in violation of Title VII; (2) disability discrimination in violation of the Americans with Disabilities Act ("ADA"); (3) religious discrimination in violation of the West Virginia Human Rights Act ("WVHRA");[1] (4) disability discrimination, also in violation of the WVHRA; and (5) a violation of West Virginia

---

[1] Plaintiff refers to this Act as the "Civil Rights Act" in his Complaint, but the short title is actually "The West Virginia Human Rights Act." W. Va. Code § 5-11-1.

Code Section 16-3-4b, which provides for exemptions to compulsory immunization against COVID-19 as a condition of employment. [ECF No. 1, at 8, 9, 12, 14].

On July 5, 2023, CAMC filed a motion to dismiss the complaint in its entirety, alleging that Mr. Miller has failed to state any claim upon which relief can be granted. [ECF No. 9]. Plaintiff responded in opposition,[2] [ECF No. 14], and CAMC replied, [ECF No. 17]. The matter is now ripe for review.

## II.   Legal Standard

A motion to dismiss filed under Rule 12(b)(6) tests the legal sufficiency of a complaint or pleading. *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008). Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555

---

[2] In Plaintiff's response, he urges the court to apply a liberal construction to his Complaint because "actions brought under civil rights laws are 'liberally construed by reviewing courts.'" [ECF No. 14, at 3 (quoting *U.S. ex rel. Birnbaum v. Dolan*, 452 F.2d 1078 (3d Cir. 1971))]. Plaintiff also cites three other cases that he alleges say the same. However, Plaintiff fails to explain to the Court that in *Dolan*, the Third Circuit liberally construed the complaint because civil rights actions "are often brought by persons who have had little or no legal assistance in preparing their petitions." *Dolan*, 452 F.2d at 1079. Further, when quoting *Johnson v. State of California*, Plaintiff excluded the beginning—and most important part—of the quote, which states "the Supreme Court has instructed the federal courts to liberally construe the 'inartful pleading' *of pro se litigants*, . . . and we have emphasized that the rule of liberal construction is 'particularly important in civil rights cases.'" 207 F.3d 650, 653 (9th Cir. 2000) (emphasis added) (internal citations omitted). Last, Plaintiff fails to cite any Fourth Circuit case law, and in this Circuit, the rule is that "a *pro se* litigant's pleadings are to be liberally construed." (*Abdissa v. UNC Chapel Hill*, 636 F. App'x 101, 101 (4th Cir. 2016) (giving liberal construction to a pro se pleading when the Plaintiff alleged Title VII violations); *see also Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978). As Mr. Miller is represented by counsel in this matter, this court will not construe his pleadings using the standard reserved for *pro se* litigants.

4

(2007)). "When ruling on a motion to dismiss, courts must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in favor of the plaintiff." *Farnsworth v. Loved Ones in Home Care, LLC*, No. 2:18-CV-01334, 2019 WL 956806, at *1 (S.D. W. Va. Feb. 27, 2019) (citing *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011)).

To survive a motion to dismiss, the plaintiff's factual allegations, taken as true, must "state a claim to relief that is plausible on its face." *Robertson v. Sea Pines Real Est. Co.*, 679 F.3d 278, 288 (4th Cir. 2012) (quoting *Iqbal*, 556 U.S. at 678). The plausibility standard is not a probability requirement, but "asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). To achieve facial plausibility, the plaintiff must plead facts allowing the court to draw the reasonable inference that the defendant is liable, moving the claim beyond the realm of mere possibility. *Id.* at 570. Mere "labels and conclusions" or "formulaic recitation[s] of the elements of a cause of action" are insufficient. *Twombly*, 550 U.S. at 555. Thus, "a complaint is to be construed liberally so as to do substantial justice." *Hall v. DIRECTV, LLC*, 846 F.3d 757, 777 (4th Cir. 2017).

## III. Analysis

As stated, Mr. Miller alleges two claims for religious discrimination under Title VII and the WVHRA. He also argues disability discrimination under the ADA

and the WVHRA. Last, he alleges a violation of W. Va. Code § 16-3-4b. I will discuss each in turn.

### A. Religious Discrimination under Title VII

Mr. Miller first argues that he "asserted bona fide religious beliefs that conflicted with CAMC's mandatory vaccine policy," and CAMC violated Title VII by failing to offer a reasonable accommodation for his religious beliefs and subsequently terminating his employment based on those beliefs. [ECF No. 1, ¶¶ 42–49]. Mr. Miller also alleges that submitting religious exemption requests was protected activity, and CAMC retaliated against him "by denying his exemption requests and terminating him." *Id.* ¶¶ 50–52. I will examine each of these allegations.

#### 1. Failure to Accommodate

Title VII of the Civil Rights Act provides that one may prove discrimination in employment by showing disparate treatment, or "intentional discrimination." *Abeles v. Metro. Wash. Airports Auth.*, 676 F. App'x 170, 174 (4th Cir. 2017). The Act "prohibits an employer from discriminat[ing] against any individual because of such individual's . . . religion." *Id.* (quoting 42 U.S.C. § 2000e–2(a)(1)) (cleaned up) (internal quotations omitted). Religion is defined as including "all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to an employee's . . . religious observance or practice without undue hardship." 42 U.S.C. § 2000e(j). This

definition includes a requirement that an employer "accommodate" religious beliefs, and as such, a plaintiff can bring a claim based on failure to accommodate. *Chalmers v. Tulon Co. of Richmond*, 101 F.3d 1012, 1018 (4th Cir. 1996) ("[A]n employer must, to an extent, actively attempt to accommodate an employee's religious expression or conduct.").

Religious accommodation cases allow employees to establish a claim even if they cannot show that "other (unprotected) employees were treated more favorably or cannot rebut an employer's legitimate, non-discriminatory reason" for a discharge. *Id.* Thus, "[t]o establish a prima facie religious accommodation claim, a plaintiff must establish that: '(1) he or she has a bona fide religious belief that conflicts with an employment requirement; (2) he or she informed the employer of this belief; (3) he or she was disciplined for failure to comply with the conflicting employment requirement.'" *Id.* at 1019 (quoting *Philbrook v. Ansonia Bd. of Educ.*, 757 F.2d 4765, 481 (2d Cir. 1985)).

Title VII does not, however, protect secular beliefs, and an employer has no duty to accommodate such preferences. *See Dachman v. Shalala*, 9 F. App'x 186, 192 (4th Cir. 2001) (citing *Tiano v. Dillard Dep't Stores, Inc.*, 139 F.3d 679, 682 (9th Cir.1998)); *see also Ellison v. Inova Health Care Servs.*, No. 1:23-cv-00132, 2023 WL 6038016, at *4 (E.D. Va. Sept. 14, 2023) ("Title VII does not protect just any belief. To be protected, an employee's belief must be religious in nature."). Courts—which are not in a position to "question the centrality of particular beliefs or practices of

faith, or the validity of particular litigants' interpretations of those creeds," *Hernandez v. Comm'r*, 490 U.S. 680, 699 (1989)—should instead determine whether an individual's purported beliefs are both sincerely held and religious in nature. *Ellison*, 2023 WL 6038016, at *4 (citing *Welsch v. United States*, 398 U.S. 333, 339 (1970)). In analyzing whether beliefs are religious in nature, courts in this circuit have analyzed whether the beliefs "address fundamental and ultimate questions . . . [of] deep and imponderable matters." *Id.* (citing *Africa v. Com. of Pa.*, 662 F.2d 1025 (3d Cir. 1981); *Foshee v. AstraZeneca Pharms. LP*, No. SAG-23-00893, 2023 WL 6845425, at *4 (D. Md. Oct. 17, 2023). Thus, in order to determine whether Mr. Miller has sufficiently made a *prima facie* case for failure to accommodate, I will focus on only his religious assertions and not on other personal or scientific beliefs.

In Mr. Miller's religious exemption requests, he stated that "any coerced medical treatment goes against my religious faith and the right of conscience to control one's own medical treatment." [ECF No. 1-1, at 2].[3] However, "beliefs amounting to a declaration that an employee has the right to make unilateral decisions do not constitute religious beliefs, even where religion is expressly invoked in communicating the beliefs." *Foshee*, 2023 WL 6845425, at *4; *see also Finkbeiner v. Geisinger Clinic*, 623 F. Supp. 3d 458, 465 (M.D. Penn. 2022) ("[Plaintiff's belief that she has a 'God given right to make [her] own choices' . . . would amount to a

---

[3] His other arguments, which explain his beliefs about informed consent, Nuremberg Code violations, ADA violations, and potential tort liability for battery. [ECF No. 1-1, at 3–4], are based on personal and secular beliefs and do not go towards a sincerely held religious belief. As such, the court need not consider them.

'blanket privilege' and a 'limitless excuse for avoiding all unwanted . . . obligations.") (quoting *Africa*, 662 F.2d at 1030–31) (second alteration in original).

Mr. Miller also argued that "[p]artaking in a vaccine made from aborted fetuses makes [him] complicit in an action that offends [his] religious faith" because manufacturers have "developed and confirmed their vaccines use fetal cell lines." [ECF No. 1-1, at 2]; *see also* [ECF No. 1, ¶ 17 ("Mr. Miller is a member of the United Methodist Church . . . [and] holds religious objections to the use of aborted fetal cells in the production of all COVID-19 vaccines.")]. There is nothing at this stage to suggest this belief is not sincerely held, and Mr. Miller has sufficiently pleaded a nexus between his belief and his religion. *See, e.g., Gardner-Alfred v. Fed. Rsrv. Bank of N.Y.*, 651 F. Supp. 3d 695, 722 (S.D.N.Y. 2023) (finding that the complaint "alleges a nexus between [Plaintiff's] religious beliefs . . . and her refusal to receive the vaccine" because she believed the injections "involve the use of aborted fetal cells").

CAMC argues that Mr. Miller does not have a bona fide religious belief because his letter was "a generic covid letter" that "was not drafted by him specifically." [ECF No. 10, at 6]. Instead, CAMC alleges that he copied a letter verbatim that he found on the internet and submitted it as his own exemption request "as if the generic letter set forth his unique, religious beliefs and was not just something he happened to find online." *Id.* at 6–7.[4] I do not find this reasoning

---

[4] CAMC also points to an alleged discrepancy between Mr. Miller's bona fide religious belief in his exemption letter and statements made to an administrative law judge ("ALJ"), and CAMC attached

convincing. The fact that Mr. Miller may have found this letter online does not prove that he does not believe in the contents of the letter. As such, Mr. Miller's failure to accommodate claim under Title VII need not be dismissed.[5]

2. Retaliation

Mr. Miller next alleges that "CAMC retaliated against Mr. Miller by denying his exemption requests and terminating him." [ECF No. 1, ¶ 52]. Title VII's anti-retaliation provision "prevents an employer from interfering (through retaliation) with an employee's efforts to secure or advance enforcement of the Act's basic guarantees." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 63 (2006) (citing 42 U.S.C. § 2000e–3(a)). To establish a claim under Title VII for retaliation, a plaintiff must demonstrate "(1) that [he] engaged in a protected activity, as well as (2) that [his] employer took an adverse employment action against [him], and (3) that there was a causal link between the two events." *DeMasters v. Carilion Clinic*, 796 F.3d 409, 416 (4th Cir. 2015) (quoting *Boyer–Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 281 (4th Cir. 2015)). "The text, structure, and history of Title VII demonstrate that a plaintiff making a retaliation claim . . . must establish that his

---

this transcript to its motion to dismiss. *See* [ECF No. 9-5]. At the motion to dismiss stage, courts may rely on evidence even if extraneous to the complaint if the evidence is "integral to and explicitly relied on in the complaint and [if] the plaintiffs do not challenge its authenticity." *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004). Although Mr. Miller does not challenge the exhibit's authenticity, it is not proper for the court to consider this exhibit at the motion to dismiss stage. Mr. Miller stated his religious beliefs in his Complaint using support from his exemption requests, and the Complaint does not make mention of nor "explicitly rel[y] on" the hearing in front of the ALJ. Considering such exhibit would convert this motion to one for summary judgment, which is not appropriate at this stage. *See Kerr v. Marshall Univ. Bd. of Governors*, 824 F.3d 62, 68 n.1 (4th Cir. 2016).

[5] At this stage, the Court expresses no opinion on whether the religious exemption would pose an undue hardship on Defendant.

or her protected activity was a but for cause of the alleged adverse action by the employer." *Univ. of Texas S.W. Med. Ctr. v. Nassar*, 570 U.S. 338, 362 (2013).

Here, Mr. Miller argues that his protected activity was submitting the religious exemption request to CAMC, wherein he expressed his legal concerns with the vaccine mandate. However, the Court need not address whether this activity is protected because Mr. Miller failed to establish a causal connection between his accommodation request and his termination from CAMC. His choice not to get vaccinated by the February 23, 2022, deadline, would have resulted in his subsequent termination whether or not he submitted such exemption requests. As such, he cannot make out a retaliation claim.

### B. Religious Discrimination in Violation of the WVHRA

Next, Mr. Miller argues that he asserted bona fide religious beliefs, and by failing to offer any accommodations and by denying his exemption request, CAMC discriminated against him on the basis of his religious beliefs. [ECF No. 1, ¶¶ 67–73]. CAMC again argues that Mr. Miller does not have a bona fide religious belief. [ECF No. 10, at 6].

The WVHRA makes it unlawful for employers to discriminate against individuals if the individual is "able and competent to perform the services required." W. Va. Code § 5-11-9. West Virginia's Code of State Rules provides that employers cannot discriminate "on the basis of religion, . . . against an individual concerning the terms, conditions, or privileges of employment unless it can be

11

shown that the employer cannot reasonably accommodate an employee's . . . religious observance or practice without undue hardship on the conduct of its business." W. Va. Code St. R. § 77-3-3. The burden to prove that an accommodation imposes an undue hardship is on the employer, and "resolution of such cases depends on specific factual circumstances." *Id.*

Here, I have found that Mr. Miller has pleaded a bona fide religious belief by asserting that the use of aborted fetal cells violates his religion. Furthermore, CAMC has not argued—but reserved the right to assert—that it would suffer an undue hardship if Mr. Miller were permitted to work unvaccinated. *See* [ECF No. 10, at n.4]. As such, this claim is not dismissed.

### C. Disability Discrimination Under the ADA

Mr. Miller next alleges that he was discriminated against based on a "perceived disability" of "being unvaccinated" because "CAMC regarded unvaccinated individuals as being 'disabled' and unable to perform the duties of their employment." [ECF No. 1, ¶¶ 60, 61]. He then alleges that "virtually every employer in America has shown that reasonable accommodations and alternatives to vaccination" exist and that CAMC cannot show that any alternative, less-intrusive accommodations would cause undue hardship. *Id.* ¶ 64–66. Mr. Miller also asserts that CAMC did not engage in an interactive process or conduct an individualized assessment of his "unique circumstances." *Id.* ¶ 59.

12

CAMC argues that Mr. Miller cannot establish a *prima facie* case under the ADA as he is neither disabled nor regarded as having a disability. [ECF No. 10, at 10–11]. CAMC claims that Mr. Miller provides no evidence that he was perceived as disabled, and to hold otherwise would lead to the "absurd result that CAMC would have to consider *its entire workforce*, prior to the CMS mandate, to be disabled." *Id.* at 13. Moreover, CAMC asserts that Mr. Miller did not—and cannot—allege that he was treated differently because the vaccine mandate was facially neutral and applied to all CAMC employees. *Id.* at 17.[6]

The ADA provides that "no covered entity shall discriminate against a qualified individual on the basis of disability in regard to . . . the hiring, advancement, or discharge of employees, . . . and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112. To establish a *prima facie* case for wrongful discharge under the ADA, a plaintiff must demonstrate that "(1) he is within the ADA's protected class; (2) he was discharged; (3) at the time of his discharge, he was performing the job at a level that met his employer's legitimate expectations; and (4) his discharge occurred under circumstances that raise a reasonable inference of unlawful discrimination." *Haulbrook v. Michelin N. Am.*,

---

[6] CAMC also argues that it has a legitimate, non-discriminatory reason for denying both of Mr. Miller's exemption requests. [ECF No. 10, at 14–17]. However, this issue is not properly before the court at this time because a plaintiff "is not generally required to plead facts that specifically rebut a defendant's legitimate, nondiscriminatory reasons." *Ryan-White v. Blank*, 922 F. Supp. 2d 19, 23 (D.D.C. 2013); *see also Reynoso v. All Foods, Inc.*, 908 F. Supp.2d 330, 343 (E.D.N.Y. 2012) (finding that a defendant's showing of a legitimate, non-discriminatory reason "is an issue to be decided on summary judgment, not at the motion to dismiss stage"); *Bledsoe v. Tenn. Valley Auth. Bd. of Dirs.*, No. 1:20-cv-00029, 2020 WL 13064724, at *5 (E.D. Tenn. Sept. 3, 2020) (noting that a non-discriminatory reason is "properly addressed at the summary judgment stage").

252 F.3d 696, 702 (4th Cir. 2001) (citing *Ennis v. Nat'l Ass'n of Bus. & Educ. Radio*, 53 F.3d 55, 58 (4th Cir. 1995)). To be within the ADA's protected class, one must be "a qualified individual with a disability." *Id.* (citing 42 U.S.C. § 12112). A disability means "a physical or mental impairment that substantially limits one or more major life activities . . . or being regarded as having such an impairment." 42 U.S.C. § 12102(1). Working is an example of a major life activity. *Id.* § 12102(2)(A). An individual is "regarded as having such an impairment" if he establishes that he has been subjected to a prohibited action due to an actual or perceived physical or mental impairment, "whether or not the impairment limits or is perceived to limit a major life activity." *Id.* § 12102(3). Here, Mr. Miller has only alleged that CAMC discriminated against him because he was "regarded as" having a disability: "being unvaccinated." [ECF No. 1, ¶ 60].

In examining Mr. Miller's disability discrimination claim against CAMC, I must first address deficiencies in the party's pleading as they are of particular concern to the Court. First, in his Complaint, Mr. Miller seemingly accuses a third party, 3M, of disability discrimination. *See* [ECF No. 1, ¶ 62 ("CAMC discriminated against Mr. Miller by termination if he failed to receive the COVID-19 vaccine, a 'condition' regarded as a disability under *3M's policy*.") (emphasis added)]; *see also id.* ¶ 63 ("Plaintiff had been successfully performing his job for months with no apparent danger to fellow employees or 3M's operation."). Plaintiff references 3M a third time, *see id.* ¶ 41, yet Mr. Miller is not suing 3M, and he does not attempt to

explain 3M's relationship to this action. This is presumably because Plaintiff copied these paragraphs from a different federal complaint in which 3M is a party. *See* Verified Complaint ¶ 138, *Goecke v. 3M Company*, No. 0:22-cv-03087, 2023 WL 3309784 (D. Minn. Apr. 20, 2023), ECF No. 1. As 3M is not a party to this action, the court will strike paragraphs 62 and 63 from the Complaint. *See* Fed. R. Civ. P. 12(f) ("The Court [on its own] may strike from a pleading . . . any immaterial, impertinent, or scandalous matter.").

The skeletal remains of his ADA claim do not present a proper basis for relief. Mr. Miller has only alleged a mere conclusory statement that CAMC regarded unvaccinated individuals as being disabled and "unable to perform the duties of their employment," *see* [ECF No. 1, ¶ 61], and such statement is insufficient to establish a claim under the ADA. The CMS Mandate was applicable to every employee. And it is not that CAMC believed him to be *unable* to perform, but rather, by refusing to receive the vaccine, he became *ineligible* for the job. This distinction is important. To hold otherwise "would require inferring that [CAMC] regarded all of its [] employees as having a disability" prior to receiving the vaccine, which is an assumption that other courts have found to be "implausible." *See Sharikov v. Philips Med. Sys. MR, Inc.*, No. 122CV00326BKSDJS, 2023 WL 2390360, at *8 (N.D.N.Y. Mar. 7, 2023) (quoting *Shklyar v. Carboline Co.*, 616 F. Supp. 3d 920 (E.D. Mo. 2022) (finding the inference that all unvaccinated employees have a disability to be unreasonable), *aff'd*, No. 22-2618, 2023 WL 1487782 (8th Cir.

Feb. 3, 2023), *cert. denied*, No. 23-145, 2023 WL 6558492 (U.S. Oct. 10, 2023)). Other courts in this Circuit agree. *See, e.g.*, *Jorgenson v. Conduent Transp. Sols., Inc.*, No. CV SAG-22-01648, 2023 WL 1472022, at *4 (D. Md. Feb. 2, 2023) ("Merely requiring Plaintiff to follow a COVID-19 safety policy applicable to all employees does not support the inference that [Defendant] classified Plaintiff as disabled under ADA."), *aff'd*, No. 23-1198, 2023 WL 4105705 (4th Cir. June 21, 2023); *Speaks v. Health Sys. Mgmt., Inc.*, No. 5:22-CV-00077-KDB-DCK, 2022 WL 3448649, at *5 (W.D.N.C. Aug. 17, 2022) (finding that Defendant did not classify Plaintiff as having an impairment that limited a major life activity because "she was simply required to become vaccinated under the Company's COVID-19 policy applicable to all employees which . . . plainly did not impair her ability to work"). I find the reasoning of these courts to be persuasive. As such, Count II fails to state a claim upon which relief can be granted and must be dismissed.

### D. Disability Discrimination in Violation of the WVHRA

I also find Mr. Miller's disability discrimination claim to be unsuccessful under the WVHRA. The WVHRA provisions are almost identical to that of the ADA, making it unlawful "[f]or an employer to discriminate against an individual . . . if the individual is able and competent to perform the services required even if such individual is . . . disabled." W. Va. Code § 5-11-9(1). To discriminate means "to exclude from, or fail or refuse to extend to, a person equal opportunities because of . . . disability." *Id.* § 5-11-3(h). The definition of disability in the WVHRA is similar to

that under the ADA, and it encompasses any impairment which substantially limits a major life activity, such as working, or "being regarded as having such impairment." *Id.* § 5-11-3(m).

To establish a *prima facie* case of employment discrimination under the WVHRA, an individual must prove that (1) he is a member of a protected class; (2) the employer made an adverse decision concerning him; and (3) "but for [his] protected status, the adverse decision would not have been made." Syl. Pt. 3, *Conaway v. E. Associated Coal Corp.*, 358 S.E.2d 423 (W. Va. 1986). For this count, Mr. Miller alleges he is a member of a protected class because CAMC perceived him to be "necessarily immuno-deficient and thereby unable to safely perform his job duties in the workplace." [ECF No. 14, at 9]. Further, Mr. Miller argues that CAMC's conclusion that his vaccination status limits him from "*all* duties and position[s]" was discriminatory. *Id.* at 11.

For the same reasons as discussed above, Mr. Miller cannot show that CAMC regarded him as having a disability. Regarding all unvaccinated individuals as being disabled is implausible, particularly because CAMC allowed unvaccinated individuals to remain employed if they qualified for a vaccine exemption consistent with federal law. As such, this claim must also fail.

### E.  Violation of W. Va. Code § 16-3-4b

Last, Mr. Miller alleges that CAMC violated of West Virginia Code Section 16-3-4b. Specifically, Mr. Miller argues that he provided two certifications—one

notarized stating his religious objections and another from his licensed physician—that explained why he could not receive the COVID-19 vaccine. [ECF No. 1, ¶¶ 91–92]. Because the hospital failed to grant his exemption requests, Mr. Miller asserts that CAMC violated state law. *Id.* ¶ 94.

The Act, which went into effect January 18, 2022, states that "[a] covered employer . . . shall exempt current or prospective employees from . . . immunization requirements upon the presentation of one" of two certifications: (1) a certification signed by a licensed physician or registered nurse stating that the physical condition of the employee is such that a COVID-19 immunization is contraindicated; or (2) a notarized certification executed by the employee stating that he has a sincerely held religious belief that prevents him from taking the COVID-19 vaccine. W. Va. Code § 16-3-4b(a). If an individual exercises exemption rights under this statute, the covered employer may not discriminate against or penalize its employees via practices such as firing. *Id.* § 16-3-4b(b).

A covered employer includes any business entity engaged in any business activity within West Virginia, including for-profit or not-for-profit activity, with employees. *Id.* § 16-3-4b(c). However, a covered employer "does not include any Medicare or Medicaid-certified facilities which are subject to enforceable federal regulations contrary to the requirements of this section." *Id.* Any person "harmed by a violation of [W. Va. Code § 16-3-4b] may seek injunctive relief." *Id.* § 16-3-4b(e).

18

CAMC argues that this provision in the West Virginia Code is preempted by the federal CMS mandate. [ECF No. 10, at 19]. It further contends that because CAMC is a Medicare or Medicaid-certified facility, it is expressly outside the scope of the Act. *Id.* at 19–20. Last, CAMC asserts that the state law does not grant a private cause of action. Taken together, CAMC argues Mr. Miller's claim is precluded. *Id.*

Mr. Miller counters that CAMC can comply with both the CMS mandate and West Virginia law because both contain exemption requirements that "aim to achieve the same purpose" of protecting employees with sincere religious beliefs or medical reasons that preclude them from complying with a vaccine mandate. [ECF No. 14, at 15]. In other words, Mr. Miller states that both laws "prevent employees from being held hostage by their employer," and because there is no clear evidence of a conflict of laws, CAMC must comply with West Virginia Code § 16-3-4b.

Mr. Miller's argument is unavailing. Federal preemption is rooted in the Supremacy Clause of the Constitution, which provides that "[t]his Constitution, and the Laws of the United States which shall be made in Pursuance thereof ... shall be the supreme Law of the Land ... any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2. Preemption may be express or implied. *Oneok, Inc. v. Learjet, Inc.*, 575 U.S. 373, 376–77 (2015). Field preemption exists if Congress intended "'to foreclose any state regulation in the area' irrespective of whether state law is consistent or inconsistent with 'federal

standards.'" *Id.* at 377 (quoting *Arizona v. United States*, 567 U.S. 387, 401 (2012)). Conflict preemption, on the other hand, exists where "compliance with both state and federal law is impossible" or where "the state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" *Id.* (quoting *California v. ARC Am. Corp.*, 490 U.S. 93, 100–01 (1989)).

On November 5, 2021, CMS issued an interim rule requiring certain health care providers or hospitals to ensure that its employees are vaccinated against COVID-19. 86 Fed. Reg. 61561, 61616–27. This rule requires those who participate in Medicare and Medicaid programs to implement the CMS Mandate and provides that noncompliance may result in civil monetary penalties, termination of participation in Medicare and Medicaid, or denial of payment for new admissions. *Id.* at 61574. The Supreme Court has ruled that CMS can enforce its mandate. *Biden v. Missouri*, 595 U.S. 87 (2022).

Mr. Miller concedes that CAMC is subject to the federal rules and implemented its vaccine policy "in compliance with the federal CMS mandate." [ECF No. 1, ¶ 14]. Moreover, the West Virginia legislature recognized that its law is inconsistent with the federal CMS Mandate and expressly excluded from its law any Medicare or Medicaid-certified facilities "which are subject to enforceable federal regulations *contrary* to the requirements of this section." W. Va. Code § 16-3-4b (emphasis added). As such, CAMC is not a "covered employer" under the Act, and the plain reading of the statute forecloses Mr. Miller's argument. *See id.* ("[A]

*covered employer* . . . shall exempt current or prospective employees from . . . immunization requirements . . . ."). Because CAMC is not a covered employer, it is not subject to the Act's requirements. As such, Count V must be dismissed.

## IV.    Amendment of the Pleadings

In his response, Mr. Miller "respectfully requests leave to amend to correct any such insufficiencies" should I find any of his claims to be "insufficiently pleaded." [ECF No. 14, at 3–4]. This request falls short of the expectation that a plaintiff file a motion for leave to amend and explain the changes he attempts to make. Rule 15 allows a party to amend its pleading "once as a matter of course no later than . . . 21 days after service of a motion under Rule 12(b)." Fed. R. Civ. P. 15(a)(1)(B). If not, "in all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave." *Id.* at (a)(2). The Rules permitted Mr. Miller to amend his complaint as of right after Defendant's filed the present Motion to Dismiss but chose not to do so. Instead, Mr. Miller responded to the motion and, in an ostensible concession that some of his claims may be insufficient, asked for leave to amend "in the event" that I agree with Defendant's position. As such, I need not consider this request.

## V.    Conclusion

For the foregoing reasons, Defendant's motion to Dismiss is **GRANTED in part** as to Counts II, IV, and V, and such claims are **DISMISSED with prejudice**. Defendant's Motion, however, is **DENIED in part** as to Counts I and III, and

Plaintiff's religious discrimination claims for failure to accommodate under Title VII and the WVHRA remain pending. The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:    November 14, 2023

JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE