IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

CHARLES MILLER,

        Plaintiff,

v.                              CIVIL ACTION NO.  2:23-cv-00340

CHARLESTON AREA MEDICAL CENTER,

        Defendant.

MEMORANDUM OPINION AND ORDER

Pending before the court is Defendant's Motion for Summary Judgment filed by Defendant Charleston Area Medical Center, Inc. ("CAMC"). [ECF No. 35]. This motion is now ripe for review. For the reasons that follow, CAMC's motion, [ECF No. 35], is **GRANTED**.

I. **Background**

Plaintiff Charles Miller filed his complaint before this court alleging that Defendant CAMC demonstrated a pattern of discriminatory and illegal behavior through the implementation of a COVID-19 vaccination mandate. Charles Miller ("Plaintiff") was employed by CAMC as a respiratory therapist for over 30 years. [ECF No. 1, ¶¶ 7, 13]; [ECF No. 1]. On September 11, 2021, during Plaintiff's employment, CAMC instituted a policy requiring all its employees to receive a COVID-19 vaccine unless a qualifying medical exemption applied. [ECF No. 9-1, at 2] ("Anyone

requesting an exemption/accommodation must submit a completed 'Request for Exemption from COVID-19 Vaccination' form by Sept. 8. . . . These forms will be reviewed, and the employee notified if approved."); *see also* [ECF No. 9-2] (explaining the vaccination policy and providing a link to an exemption request form).

Pursuant to this policy, Plaintiff requested both a religious and medical exemption. *See* Exhibit A; [ECF No. 1-1]. First, Plaintiff stated that the COVID-19 vaccine was "not a traditional vaccine, but rather a gene therapy with the potential to alter a recipient's DNA." and thus was a violation of his religious beliefs. [ECF No. 1, ¶ 21]. Second, Plaintiff stated that his heart related issues and high blood pressure made vaccine injections dangerous. *Id.* ¶ 24. Both Plaintiff's September 11, 2021, exemption request, and his similar February 23, 2022, exemption request were denied. [ECF No. 1, ¶ 28]. Citing continued concerns with receiving the vaccine, Plaintiff refused inoculation. Consequently, pursuant to CAMC's internal policy, Plaintiff was removed from the schedule and considered to have voluntarily resigned from his position. *See* [ECF No. 9-2].

Following his termination from CAMC, Plaintiff filed a complaint with the United States Equal Employment Opportunity Commission ("EEOC") alleging both religious and disability discrimination. *Id.* ¶ 34. The EEOC gave Plaintiff notice of a right to sue on January 19, 2023. *Id.* He filed the instant action on April 19, 2023. In his Complaint, Plaintiff alleged five causes of action against CAMC: (1) religious discrimination in violation of Title VII; (2) disability discrimination in violation of the Americans with Disabilities Act ("ADA"); (3) religious discrimination in violation of

2

the West Virginia Human Rights Act ("WVHRA"); (4) disability discrimination, also in violation of the WVHRA; and (5) a violation of *West Virginia Code* section 16-3-4b, which provides for exemptions to compulsory immunization against COVID-19 as a condition of employment. [ECF No. 1, at 8, 9, 12, 14].

On November 14, 2023, I dismissed Counts II, IV, and V with prejudice leaving only Counts I and III, claims affiliated with Plaintiff's religious contentions. [ECF No. 21].

## II.    Summary Judgment Standard

Rule 56 of the Federal Rules of Civil Procedure governs motions for summary judgment. A court "may grant summary judgment only if, taking the facts in the best light for the nonmoving party, no material facts are disputed and the moving party is entitled to judgment as a matter of law." *Ausherman v. Bank of Am. Corp.*, 352 F.3d 896, 899 (4th Cir. 2003). "Facts are 'material' when they might affect the outcome of the case, and a 'genuine issue' exists when the evidence would allow a reasonable jury to return a verdict for the nonmoving party." *The News & Observer Publ. Co. v. Raleigh–Durham Airport Auth.*, 597 F.3d 570, 576 (4th Cir. 2010).

The moving party may meet its burden of showing that no genuine issue of fact exists by use of "depositions, answers to interrogatories, answers to requests for admission, and various documents submitted under request for production." *Barwick v. Celotex Corp.*, 736 F.2d 946, 958 (4th Cir. 1984). "[A] party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a

genuine issue for trial." *Anderson v. Liberty Lobby*, 477 U.S. 242, 256 (1986). Although the court will view all underlying facts and inferences in the light most favorable to the nonmoving party, the nonmoving party nonetheless must offer some "concrete evidence from which a reasonable juror could return a verdict in their favor." *Anderson*, 477 U.S. at 256.

Summary judgment is appropriate when the nonmoving party has the burden of proof on an essential element of their case and does not make, after adequate time for discovery, a showing sufficient to establish that element. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The nonmoving party must satisfy this burden of proof by offering more than a mere "scintilla of evidence" in support of her position. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or unsupported speculation, without more, are insufficient to preclude the granting of a summary judgment motion. See *Felty v. Graves–Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987).

## III. Discussion

The Defendant claims that, even if the Plaintiff is able to prove a prima facie case of religious discrimination for failure to accommodate, allowing the Plaintiff to work in the hospital unvaccinated imposes an undue hardship. I agree.

Given my earlier order dismissing Counts II, IV, and V of Plaintiff's claim, only Counts I and III and Plaintiffs religious discrimination claims for failure to accommodate under Title VII and the WVHRA remain pending. [ECF No. 21]. In Count I, Plaintiff alleges religious discrimination in violation of Title VII of the Civil

Rights Act of 1964. [ECF No. 1, at 8–9]. Count III alleges that the same conduct is violative of the WVHRA. *Id*. at 12. Defendant argues that Plaintiff fails to satisfy the applicable standard under Title VII and that the evidentiary standards under Title VII and WVHRA are identical. [ECF No. 35, at 2]. It is well-established by courts in West Virginia that both the state and federal codifications of the Civil Rights Act should be construed "to coincide with the prevailing federal application of Title VII" unless variations in statutory language or other compelling reasons require a different result. *Hanlon v. Chambers,* 464 S.E.2d 741, 754 (1995). *See also Henegar v. Sears, Roebuck & Co.*, 965 F. Supp. 833 (N.D. W. Va. 1997). Seeing no compelling reasons suggesting otherwise, I analyze both religious claims under the federal application.

Title VII makes it unlawful for employers to discriminate against any individual with respect to their "compensation, terms, conditions, or privileges [of] employment, because of such individual's ... religion." 42 U.S.C. § 2000e-2(a)(1). The EEOC has interpreted this to mean that employers are obligated to make accommodations for the religious needs of employees unless that need poses an undue hardship on the "conduct of the employer's business". *Groff v. DeJoy*, 600 U.S. 447, 456–58 (2023). Therefore, in religious accommodation cases, a burden shifting framework applies. *E.E.O.C. v. Firestone Fibers & Textiles Co.*, 515 F.3d 307, 312 (4th Cir. 2008). Once a plaintiff establishes a prima facie claim by showing that "(1) he or she has a bona fide religious belief that conflicts with an employment requirement; (2) he or she informed the employer of this belief; [and] (3) he or she was

5

disciplined for failure to comply with the conflicting employment requirement." It is the employer that must demonstrate that providing a requested accommodation presents an undue burden. Further, in showing undue hardship, a Defendant must show that a burden is substantial in the context of an employer's overall business. *Groff*, 600 U.S at 468. Even if I find that the Plaintiff has (1) a sincerely held belief and (2) that belief is religious in nature, the Plaintiff's case may nevertheless fail if CAMC can show that it would suffer an undue burden.

As an initial matter Defendant argues that Plaintiff's beliefs are not religious in nature or sincerely held. Specifically, Defendant notes that Plaintiff testified is his own deposition that his first exemption request was developed from a "copy and paste form" obtained online from a secular podcast. [ECF No. 35]. Defendant claims the secular nature of Plaintiff's belief is further underscored by the fact that Plaintiff's request is nearly identical to the "Employee Letter Example: Vaccine Mandate Objection" letter posted on an online legal advice podcast. *Id.*; [ECF Nos. 35-4, 35-5]. Further, Defendant notes that throughout the entirety of this form letter, there remains no citation to a specific religious faith, sect, or belief. [ECF No. 35].

Plaintiff responds by asserting that courts have consistently concluded that objections to COVID-19 vaccination requirements with this limited degree of specificity are sufficient to survive motions for summary judgment. *See Ellison*, 2023 WL 4627437, at *6 (holding that Plaintiff's statements regarding his objections to the use of fetal cell tissue in the COVID-19 vaccines in his exemption request "provides sufficient allegations regarding his subjective personal beliefs, how those beliefs are

related to his faith, and how those beliefs form the basis of his objection to the COVID-19 vaccination" to survive a motion to dismiss).

I find that both determining the religious nature of Plaintiff's beliefs as well as if those beliefs are sincerely held a delicate task. *See Shigley v. Tydings & Rosenberg LLP,* Civ. No. JKB-23-02717, 2024 WL 1156613, at \*5 (D. Md. Mar. 18, 2024). However, given the overwhelming burden that a hospital faces in being forced to employ an unvaccinated respiratory therapist, I find that analysis of Plaintiff's religious beliefs is unwarranted. Assuming arguendo that Plaintiff's belief is religious in nature and sincerely held, I find summary judgement to still be appropriate given the Defendant's ability to meet its burden of demonstrating an undue hardship.

Recently, the Supreme Court clarified the undue burden standard in *Groff.* 600 U.S. at 471. In *Groff,* the Plaintiff was an Evangelical Christian who believed, for religious reasons, that being forced to work Sunday shifts at the United States Postal Service (USPS) was a violation of his sincerely held religious beliefs. *Id.* at 456. When USPS entered peak season, and mandated that Groff work his assigned Sunday shifts, he refused and ultimately resigned. *Id.* Subsequently, Groff sued under Title VII and asserted that USPS was not unduly burdened by having to accommodate his Sunday Sabbath practice. In a unanimous opinion the Court stated that, rather than a Defendant having to just demonstrate an inconvenience or *de minimis* cost, undue hardship within the context of Title VII "means what is says". *Id.* at 471. Specifically, the Court established that to determine whether an undue burden existed, one must show that a burden would be substantial by viewing it in context of an employer's

business and using the "common sense manner that it would use in applying any such test" *Id.*

The Defendant argues that no material fact exists as to the undue hardship it would face by continuing to employ the Plaintiff. First, the Defendant states that The Center for Medicare & Medicaid Services (CMS) has in place a mandate that only permits exemptions required by Federal Law [ECF No. 36, at 16]. Violating this standard could lead CAMC to incur civil money penalties, denial of payment for new admissions, or termination of its own Medicare/Medicaid provider agreement. *Id.* Next, the Defendant states that permitting the Plaintiff, who serves as a respiratory therapist, to remain employed while unvaccinated would expose all patients, families, and medical professionals to an increased risk of COVID-19 exposure. Finally, because CAMC is a hospital, Defendant suggests that there is an increased risk posed by having an unvaccinated person present, thus demonstrating substantial hardship. *Id.*

The Plaintiff's position is simple, he contends that there is no way for CAMC to demonstrate undue hardship. Chiefly relying on *Groff*, rather than disagreeing with the demonstrated standard, Plaintiff contends that CAMC cannot show they have a "more than de minimis" burden. [ECF No. 39, at 13].

I find no genuine issue of material fact as to the substantial burden that CAMC faces by allowing a respiratory therapist to remain unvaccinated within a large hospital. I first take note that the undue burden analysis has been clarified in the context of COVID-19 transmission and vaccine mandates broadly. As a preliminary

matter, in *Groff* the Court acknowledged that an accommodation's impact on the conduct of coworkers is a chief consideration in the undue burden analysis. *Id.* at 471–73. The Court held that the undue burden test takes into account "all relevant factors in the case at hand, including the particular accommodations at issue and their practical impact in light of the nature, size and operating cost of [an] employer" *Id.* at 470–71. The same relevant factors apply to hospitals.

In the hospital context, there is extensive case law holding that retaining an unvaccinated employee is an undue hardship. For example, in *Together Emps. v. Mass Gen. Brigham Inc.*, the court concluded that "permitting the named plaintiffs to continue to work" at a major hospital "without being vaccinated would materially increase the risk of spreading the disease and undermine public trust and confidence in the safety of its facilities." 573 F. Supp. 3d 412, 433 (D. Mass. 2021), *aff'd*, 32 F.4th 82 (1st Cir. 2022). Even without being able to quantify the cost the hospital would incur in being forced to accommodate unvaccinated employees, the court determined that the burden would be far more than "de minimis".

In *Panozzo v. Riverside Healthcare*, the court employed the fact intensive analysis required under the undue burden standard and concluded that COVID-19 exemptions within a hospital constituted an undue hardship. No. 21-CV-2292, 2022 WL 18779991, at *7 (C.D. Ill. Jan. 2, 2022). The court stated that unlike the influenza vaccine, the COVID-19 vaccine insulates people from a more serious harm. *Id.* at 8 A harm that often results in hospitalization and death even in otherwise healthy people. *Id.* Further, the court concluded that even taking into account the "ebbs and flows in

infections, hospitalizations, and deaths in the ongoing pandemic," there remains a risk in allowing employees who are not inoculated to work in a hospital. *Id*. The court also stated that whether other employers in the healthcare field chose to not impose mandatory vaccination requirements was irrelevant. *Id*. Just because certain medical employers choose to accept the hardship that "unvaccinated patient-facing employees pose" does not mean this same hardship is de minimis. *Id*.

Courts have also found an undue burden by calculating a hospital's non-economic costs. For example, in *Aukamp-Corcoran v. Lancaster General Hospital*, the defendant hospital granted 81 medical-based and 24 religious-based exemptions to employees. 2022 WL 507479, at *6–7 (E.D. Pa. Feb. 18, 2022). Despite prior exemptions existing, the court stated that adding one additional unvaccinated employee would increase the "potential risk" within the facility, thus constituting an undue burden. Increased safety risks, even when not a part of a specific quantitative calculation, are more than enough to establish undue burden. *Robinson v. Children's Hosp. Boston*, No. 14-10263-DJC, 2016 WL 1337255, at *9 (D. Mass. Apr. 5, 2016); *see also Howe v. Massachusetts Dep't of Correction*, No. 4:22-CV-40119-MRG, 2024 WL 3536830, at *6 (D. Mass. July 25, 2024) (concluding that even on the non-economic front, accommodating a people facing unvaccinated employee would pose substantial health and safety risks); *see also Mace v. Crouse Health Hosp., Inc.*, No. C22-1153, 2023 WL 5049465, at *7 (N.D.N.Y. Aug. 3, 2023) (holding an undue burden exists when an employee has duties such that, if they were infected with COVID-19, they could potentially expose other covered personnel, patients, or residents).

10

Here, just as in the case law above, Mr. Miller is a client facing individual who has refused to receive the COVID-19 vaccine and is employed by a hospital. The only demonstrative difference I find with Mr. Miller's case is that rather than just any employee, he works specifically as a respiratory therapist. The non-economic costs that come with allowing an unvaccinated, respiratory therapist to be in contact with people often seeking care for life threatening illnesses has exactly the type of impact the Court in *Groff* would deem an undue burden.[1]

Historically, being forced to accommodate an unvaccinated employee has been more than enough to pose an undue hardship for medical facilities across our nation actively combatting the COVID-19 pandemic even today. Employing the "common sense" analysis outlined in *Groff*, I find it painstakingly obvious that a respiratory therapist with a heightened risk of transmitting a respiratory illness poses not just an undue burden on the hospital, but a substantial burden on all those seeking medical care.

Having found that there is no genuine issue of material fact as to the undue burden placed upon CAMC, the Defendant's affirmative defense succeeds. There presents no need for me to evaluate additional claims. I hereby **FIND** that no genuine issue of material fact exists at this stage. Therefore, Defendant's Motion for Summary Judgment, [ECF No. 35], is **GRANTED**. All other pending motions are **DENIED as moot.**

---

[1] I also note that also weighing the economic factors stated by CAMC related to the potential loss of Medicare or Medicaid contracts in addition to the non-economic factors related to the risk of transmission, leads me to the same conclusion.

11

The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:      October 17, 2024

JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE